Good morning, your honors. May it please the court, counsel. My name is Hank Branagh. I'm an assistant federal defender from Great Falls, Montana, and I'd like to reserve about two and a half minutes of my time for rebuttal. Is the Supreme Court's stated in Duro v. Reina, the exercise of criminal jurisdiction over Indians in Indian Country... I don't think we have... Oh, no, no, no. We do have one. I'm sorry. Go ahead. ...is a complex patchwork of federal, state, and tribal law, which is better explained by history than by logic. But I don't believe the issue I'm presenting to the court is all that complex. Basically, we're asking the court to define two phrases, declining and whether or not eligibility means the same thing as receipt of benefits for a person who is purported to be an Indian. From the briefs... The strongest fact of the answer to this is the fact that your client had been prosecuted in tribal court, which would have required him to be an Indian in order to be prosecuted. How do you respond to that? Well, in some ways, your honor, I think that puts the conclusion, or puts the cart before the horse. He said that he was arrested. There is no right to counsel in tribal court. So he had no one to advise him. And I believe that it's similar to when I drove down from Great Falls. If I got pulled over in Yellowstone County, a reasonable person would assume, well, I'm in Yellowstone County. Yellowstone County should be prosecuting me. He was on the reservation. I don't think a man with his limited intelligence and no counsel would know that he could challenge being prosecuted. And I think there was only... The trial... That was the sole question. Have you been prosecuted? Not were you convicted? I don't know that he was convicted. But even if he was, I don't think that's a benefit, first of all. And if you look at the factors set out in Bruce, I would say that's low on the declining scale of importance. Well, I've already said Bruce. It appears that everybody agrees Bruce controls. And the Bruce Court was pretty emphatic in its opinion that that's the law of the circuit. And Bruce followed the test set forth in the U.S. v. Rogers, which is of the Supreme Court in 1846, which said that an Indian person has someone who has some Indian blood and is recognized as an Indian by a tribe or by the federal government. The generally accepted test, again, is Indian blood and tribal recognition. And the blood requirement is only some blood, and clearly Mr. Cruz had some blood. It's government recognition which forms the basis of our dispute. I don't understand. Why isn't prosecution itself sufficient to show recognition? I mean, they found him, they tried him, so they recognized him as an Indian. And why isn't that recognition? I mean, that'd be a benefit, but it's certainly recognition. Well, but Bruce has recognition through the receipt of assistance. And I don't know that, again, I don't think being prosecuted in tribal court is receipt of assistance, and I don't think it nor is it the third factor, which is a benefit. And I don't think the tribe, by prosecuting someone, not giving them the right to counsel, to challenge jurisdiction, should be sufficient to confer federal jurisdiction and recognition of someone as an Indian. And I think it may be a different case if these were a long history of prosecutions, but we don't have that. And part of the reason maybe we don't have that is he really didn't live on the reservation much of his life. You can test the government's assertion that your client was eligible for Indian benefits. That's certainly what the, I believe her name was Ms. Glaze, testified to. I'm a little dubious that his, quote, descendant certificate was done the day before trial, but I'm willing to concede that. He didn't receive any benefits at least according to the record, right? Right, and that's our argument. Receipt doesn't, eligibility doesn't equal receipt. Technically, I suppose when I was in college, I was eligible for the Heisman Trophy, but I sure didn't receive it. And I also, you know, I have in my brief my lottery analogy. And the government argued, at least to the jury at trial, that Mr. Cruz somehow... Well, I don't get it. What is the lottery analogy and how does it work here? I mean, if you have a ticket in your briefcase and it's a losing ticket, you're not really eligible to win the lottery. But when I bought it, I was. Then after they had the drawing and when they called the last number, if I didn't match, then I'm not going to receive the benefit. That's because you have the wrong number. But if you have the right number and you have it in your briefcase, you're entitled to go collect your money. The fact that you don't doesn't mean you're not a winner. And this sounds to me like your client, what your client did, he was eligible for benefits. He could have gone down and gotten them. The fact that he didn't doesn't change anything, does it? I think it does, Your Honor, because as Bruce said, it's the receipt of these benefits that mean you are affirmatively claiming to be a member of the tribe. He didn't do anything else. I don't believe the record shows to affirmatively claim that. He didn't participate in any religious ceremonies, cultural festivals. He didn't get the health care. And in this day and age, I think that is somewhat of a statement that he didn't take advantage of the free health care he could have received. So when there's no affirmative acceptance of that by a person, I don't think it's proper that the federal court then exercises criminal jurisdiction over them, considering them an Indian person. Now, our second point is on the jury instruction. And the Bruce court specifically had the language, declining order of importance. And the government, in its papers at least, has argued that that was somehow dicta. And given that Bruce clearly says that these are in declining order, I think the district court's failure to give that instruction improperly has corrected the jury, specifically because the district court probably gave the general instruction that all instructions ought to be considered equally. Yet then Bruce states the law of the circuit that, well, here they're not all equal, and you have to go from top to bottom, declining order of importance. So I think when that wasn't given to the jury, that was error. And I think... Why was it prejudicial error here? Why was it prejudicial error? Because the jury was instructed, consider everything equally. But the law is, in this test anyway, these aren't equal. And the government certainly, the first factor on Bruce is tribal enrollment, and the government didn't have that. I don't think anybody questions that. So if they're supposed to be in that order of importance, and they're not told that, and we've won on the first one in the ranking of importance, I think that is error, or I think that's prejudicial. And the Bruce court specifically invited a congressional fix to their test of defining an Indian person, which is not statutorily defined, and at least in the three years since that decision, Congress hasn't taken them up. So of course it's fair to assume that, well, regardless of Congress's inaction, it was the law of the circuit, and I don't think the instruction properly instructed the jury. Our last point, which was the jury's decision that there was insufficient evidence to support it, is pretty much the same as the first one on Rule 29. There were no benefits. Do you agree with the government that on both issues, one and three, the test is a plain error? I do, Your Honor. But we submit that even given that tough standard for us, there was plain error. If there are any more questions right now, I'll reserve my remaining time. Thank you, Your Honor. Thank you, Your Honors. May it please the Court, Counsel, I'm Ryan Archer, and I represent the United States in this matter. It may not surprise Your Honors to know that I am a United States citizen. As a United States citizen, I am entitled to many benefits. I am eligible for many benefits. I do not necessarily take advantage of all of those benefits. For instance, I don't take advantage of unemployment. I don't take advantage of welfare. That's not a test for being a United States citizen, whether you take advantage of it. It seems to be a test under Bruce. Your Honor, I don't believe it is a test under Bruce. Why is that? I believe the test under Bruce is whether or not the tribe recognized the defendant in this case. Bruce sets out essentially two separate tests. One is the Rogers test. The Rogers test requires an amount of Indian blood, which is not contested in this case. The second part of the Rogers test requires either tribal or federal recognition. Bruce goes on to then consider four different factors that can qualify you for the Rogers test. Essentially what defense counsel in this case is doing is having those four factors drive the overarching Rogers test. The overarching Rogers test says nothing about eligibility for benefits. The Rogers test simply says that you must be recognized by a tribe or the federal government. And so I think it's kind of going down a false path to be arguing here today as to whether he took advantage of those benefits. Are you saying that Bruce went down a false path when it did not properly apply the Rogers test? No, Your Honor, I'm not. I'm saying that Bruce never purported to say that these other four factors required eligibility. Bruce, in fact, just noted that courts have considered these other four factors. Bruce didn't hold that these four factors were required. Bruce didn't hold that courts had to consider the four factors. And, in fact, I think if we look at the facts before us in this case, it's hard to say what these four factors really are. I think the most compelling evidence, as Judge Thomas noted earlier in this case, is that the defendant was prosecuted by the tribe. I think the difficulty, though, from your point of view with that is we don't know what happened with the prosecution, right? We don't know whether or not he was convicted. We don't know whether the court actually ruled on jurisdiction. We just have the bare fact of prosecution, right? That's correct, Your Honor, as far as the trial transcript goes. If we look what's in front of the jury, if we look at what was in the PSR, we do, in fact, find out he was convicted of domestic violence and sentenced to 30 days in tribal prison. However, admittedly, that wasn't in the record before the jury at that time. What was in front of the jury is that he was actually arrested by the tribal authorities in the instant defense and that he was prosecuted by tribal jurisdiction. You are correct that we don't know if he challenged the tribal jurisdiction or just accepted that jurisdiction when it was imposed upon him. But I think that's not the only thing that we have here. I think the other compelling evidence of tribal recognition is the fact that the defendant was a descendant. He was an acknowledged descendant, and I think that carries particular weight under the Rogers test. The defendant was a descendant. What that means, essentially, the Blackfeet tribe has subcategories of enrollment. They have traditional enrollment when you're on the tribal rolls, and the testimony in this case is that there's 16,000 members of the Blackfeet tribe that are enrolled members. There's 3,000 members that are recognized as descendants. And I think that's significant because as the enrollment officer in this case testified to, the Blackfeet tribe keeps a record of those descendants. They keep a record of that in the enrollment office. They give you a certificate. That certificate entitles you to exclusively Indian benefits such as health care, housing assistance, almost all the benefits of the enrolled members. Okay, so you've got the trial in the tribal court, and then you've got this, he's on a list as a descendant, right? Now, as far as the trial is concerned, I'm tempted to visualize this. I mean, tribal courts only can have one of the jurisdictions with tribal members. Correct. That's right. So you come to the tribal court, and let's say they catch you on the reservation, and they think you're committing some offense, and you go out to the tribal court. What would be the process for the court to say, yes, you are a, yes, you're somebody who has jurisdiction, or no, you're not? Would they look it up on the tribal? I mean, how is that process? Or do they just say we all know each other? I mean, 60,000 people or 90,000 people is not a huge number, and I would guess most know each other. Just how exactly does this? Well, Your Honor, I'm not sure how it's actually implemented in practice on the Blackfeet Reservation. I will say that I don't think they probably look you up under the rules, because the tribal court actually has jurisdiction over any Indian person. Including non-members? Excuse me? Including non-members. Correct. Including non-members. So this undercuts somewhat the idea that being tied there makes you a member, right? It is proof that you are recognized a member. No, Your Honor, I don't think that it's proof you're recognized as a member of that tribe. I think it's proof that you're recognized as an Indian person. For instance, you could be. . . But that's not good enough, is it? Yes, Your Honor. Under the Rogers test, the test is whether or not the tribe has recognized you as an Indian person. I think that's the issue before the court here. Is the defendant an Indian person? I'm telling you. . . How can they tell? I mean, you know, if they walk you into that court, they would take one look at you and they'd say, You don't look like an Indian to us. Would there be some other way, other than sort of visual. . . Your Honor, I. . . Do you sort of look like an Indian? Is there anything. . . In fact, I am. . . I'm just trying to figure out how this determination here in court, how much weight we can actually give it. Your Honor, I believe the main factor. . . I mean, I am 316th Mexican, and you probably wouldn't have guessed that by looking at me either. But. . . I. . . But see, that's why it's tricky. That's why visual recognition is sort of a tricky thing. If the defendant doesn't know, he can challenge the jurisdiction. He doesn't have a lawyer who can say, Hey, you know, you really shouldn't be here. If you don't have those procedures in place, it seems like a . . . How reliable is that process? Your Honor, I understand that. I think that was the question in Bruce, too. And that's why in Bruce, they held that the tribal arrests were not determinative of the question. I think Bruce specifically said that the fact you're subject to tribal criminal jurisdiction is strong evidence of that fact. But it can't be conclusive, because as you're pointing out, we don't know if the defendant challenged that jurisdiction. I think that's probably . . . You don't even know whether he was convicted, is that right? On the trial transcript, we don't know whether he was convicted. So it was before the jury requested that it's official evidence. Correct. And so the jury doesn't know. . . They could prosecute you, and then the case might be dismissed because you're not married. It could be. It could be. And I think in front of the jury, again, was the fact that in this case, he was arrested. And under the instant charge, he was prosecuted on another charge. But I don't think that's the only factor we have here. I think the strongest evidence that he was recognized by a tribe . . . And again, I'm not relying on whether he received the benefits or is simply eligible for the benefits. I think the Rogers test quite clearly states you just have to be recognized by the tribe. But how do we know that is the case? I mean, if he actually at some point in his past has gone to the health service and gotten benefits, then we know that, in fact, they recognized him. But if he hasn't actually done this, how do we know that if he walked out of the window or the office or whatever, they got these benefits, they wouldn't say, go away, we don't really recognize you. I'm just saying that the recognition as a descendant is enough. Recognition as a descendant, I believe it would be enough on its own. But we also have the other factor. To answer your question, Judge Kaczynski, what was introduced in trial here was that he had this descendant form. And the testimony by Wanda Glaze was that with that descendant form, he could walk into any Indian health service agency across the country, show them the descendant form, and he would be able to get services there. So that's what I asked you. You're saying that he was registered as a descendant when he was three or four by his mother is sufficient to establish that he is an Indian. I believe it is, Your Honor. And that's your case, basically. Well, you also have the other factors. You have the descendant form. You have the fact that he… He had this descendant form? Yeah, it was introduced at trial, the fact that he was a descendant. No, no, no, that's my question. He actually had that form on him or in his pocket? Your Honor, I'm not sure if he actually had the form on him in his pocket. The form that was entered into evidence was on the tribal records. Exactly. So this form was an abstract of what the tribal records were showing. This is not the form. When he said he had this form, you were really… That's not quite right, is it? We don't know that he had a form or not. It's not in the record that he actually had the form in his back pocket or in his file cabinet. So, I mean, he got it when he was three. There's some chance he didn't have it. So now he's living there in a motel in… I'm sorry, what was the town called? Browning. Browning. And he says, you know, I've got a cold. I need some health care. So he goes to the nearest dispensary, I guess a doctor's office, and he says, okay, I'm a descendant. I want service. What happens next? Do we know? Your Honor, I believe at that point… I'm sorry, I don't have a form. You know, my mom didn't, you know, I… Correct. Let's say he goes to the Indian Health Services in Browning, on the Blackfeet Reservation, and Indian Health Services, they're not sure whether or not he's entitled to receive service. Maybe he looks like me. Maybe he doesn't look like an Indian person. What they can do is they can go to Wanda Glaze, who's the tribal enrollment officer for the Blackfeet Reservation. They can look up his name under the tribal roles that are kept in the ordinary course of business. They will find Mr. Cruz's name on the tribal roles, and he'll be entitled to receive the benefits of the Indian Health Service at that point. If we have, if descendancy is enough, are we completing the two tests? I mean, the first test is some Indian blood, and the second is tribal recognition. But if you're simply saying you can never be enrolled in a tribe because you don't have enough blood, but if you are a descendant, that's enough. Why isn't that merging the two tests? Your Honor, I think it's the difference between a racial distinction and a political distinction. The first one, the first test under Rogers is whether there's enough Indian blood, and that's just purely a racial issue. The second test is a political test, really. Are there nonracial factors? I think descendancy, as used in this case, is just a term of art used by the Blackfeet tribe to recognize you for certain benefits. So I still think we're talking about the political distinction and not the racial distinction, and it's political because the Blackfeet tribe specifically recognizes you as a descendant politically, puts you on their roles, and then you're entitled to exclusive Indian benefits at that point. Okay, thank you. Thank you. Mr. Brown? Thank you, Your Honors. Just a few things. With respect to the descendant form and some of the questioning of the government concerning that, the trial transcript and the excerpts, volume 2, page 38, Ms. Glaze testified that this descendant form was issued to Mr. Cruz the day before trial. So he didn't have it walking around with him. He didn't even know about it. Excuse me? Ms. Glaze, the tribal involvement person that testified. But if he had wanted services, he could have gotten them. What opposing counsel said, you don't dispute that. He could have gotten them in the Indian Health Service, and if they had doubt about whether he's eligible, they could have gotten a certification from Ms. Glaze or somebody in her position. Yes, Your Honor. But what we dispute, the Bruce Court didn't say eligibility. It said receipt. And receipt is not the same as eligibility. What do you say to the argument that Bruce is really a gloss on Rogers and it wasn't really putting out an exhaustion test, but it's giving an instance of how recognition is established? I think the Bruce Court, in its pretty strong language, purported to be the exhaustive test for the Ninth Circuit. Now, Rogers, with all due respect, is over 150 years old, and Bruce was just in 2005, so I think Bruce was stating the law for the circumstances. You don't take the view of Justice Scalia that the older a precedent, the more vulnerable it is? No. That's what I'm saying. He spoke at our conference just two weeks ago, and I bought his book, and he was nice and autographed it for me. You don't buy that argument. Not in this case, because Bruce specifically said it. You buy it in the other case. He has, but probably not. The truth beats all. And one last thing real quick. At the end, Mr. Rogers stressed that this was a political distinction, and that is what panelist says. But interestingly, on the political point, Mr. Cruz never voted at a tribal election, so he wasn't participating in tribal life, which is also one of the tests under Bruce, which, gloss or not, under Rogers, I think, is the law in the circuit. And we believe the case should be reversed. Thank you very much. Thank you, counsel. The case is now submitted. We'll next hear argument in Avista Corporation v. Sandus County.
judges: Kozinski, Reinhardt, Thomas